UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| FRANK A. BECKER | ) | Case No. 6:09-bk-04383-KSJ |
| | ) | |
| Debtors. | ) | Chapter 13 |
| | ) | |

MEMORANDUM OPINION PARTIALLY SUSTAINING
TRUSTEE'S OBJECTION TO DEBTOR'S ATTORNEY FEES
AND ALLOWING REDUCED COMPENSATON FOR DEBTOR'S ATTORNEY

The Chapter 13 Trustee, Laurie Weatherford, objects[1] to the attorney fees requested by debtor's counsel, Robert Branson, contending they are excessive. Branson in response argues the services he provided demanded considerable time and effort, resulted in substantial benefit to debtor, and the fees are reasonable. He recently submitted an application[2] requesting total fees of $9,990. The Court will partially sustain the trustee's objection and allow total attorney fees and costs[3] in the amount of $9,740.

Bankruptcy Code § 330[4] grants authority to the Court to determine the reasonable value of compensation for services provided by debtor's counsel in a Chapter 13 case. Ordinarily, attorney fees are calculated using the lodestar method which consists of multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.[5] The lodestar fee can then be

---

[1] Doc. No. 96.
[2] Doc. No. 99.
[3] No one challenges the costs payable to Branson in the amount of $354.
[4] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.
[5] *Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874, 878-879 (11th Cir. 1990).

adjusted upward or downward taking into consideration additional factors set forth in § 330(a)(3)[6] and in *Johnson v. Georgia Highway Express, Inc.*[7]

In Chapter 13 cases, many courts have established a presumptively reasonable amount allowed for attorney fees without the need to file an application for compensation, also known as a 'no-look' fee.[8] Some courts have held that routine Chapter 13 cases need not use the lodestar method, but instead can apply a standard rate or flat fee based on the circumstances in a case.[9] The 'no-look' fee promotes judicial efficiency and flexibility in handling the volume of Chapter 13 cases managed by the courts. It also "aids bankruptcy courts in disposing of run-of-the-mill [C]hapter 13 fee applications expeditiously and uniformly, obviating the need for bankruptcy courts to make the

---

[6] 11 U.S.C. § 330 (a)(3) reads:
In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11 [11 USCS §§ 1101 et seq.], or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
   (A) the time spent on such services;
   (B) the rates charged for such services;
   (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title [11 USCS §§ 101 et seq.];
   (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
   (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
   (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title [11 USCS §§ 101 et seq.].

[7] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), lists twelve factors to be examined to determine the reasonableness of attorney fees: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Johnson*, 488 F.2d at 714.

[8] *Cahill v. Walker & Patterson, P.C.*, 428 F.3d 536 (5th Cir. 2005); *In re Debtor's Attys Fees in Chapter 13 Cases,* 374 B.R. 903 (Bankr. M.D.Fla. 2007); *In re Eliapo,* 468 F.3d 592 (9th Cir. 2006); *In re Newman,* 2003 Bankr. LEXIS 105, 2003 WL 751327 (Bankr. M.D. Fla. 2003); *In re Howell,* 226 B.R. 279 (Bankr. M.D. Fla. 1998); *In re Williams,* 357 B.R. 434 (6th Cir. BAP 2007); *In re Chapter 13 Fee Applications,* 2006 Bankr. LEXIS 2710, 2006 WL 2850115 (Bankr. S.D. Tex. October 3, 2006); *In re Murray,* 348 B.R. 917 (Bankr. M.D. Ga. 2006); *In re Walker,* 319 B.R. 917 (Bankr. S.D. Ga. 2004); *In re Smith,* 306 B.R. 5 (Bankr. M.D. Ala. 2004).

[9] *In re Howell*, 226 B.R. at 281 (noting "Chapter 13 cases are standardized and systematized, and much of the work is capable of performance by paralegals. These cases are typically handled in high volume practices. Although counsel may lose a few dollars on one case when a standard, fixed fee is approved in a routine case, counsel will make up those dollars in another case.").

same findings of fact regarding reasonable attorney time expenditures and rates in typical cases for each fee application that they review."[10]

The Orlando Division currently allows a 'no-look' fee in Chapter 13 cases up to $4,500, depending on the complexity of the case.[11] In addition to the 'no-look' fee, debtor's counsel may charge a monitoring fee for routine work necessary after the plan is confirmed. This monitoring fee can range from $20 to $50 per month, and is included in the plan payment schedule when a plan is confirmed.  (In this case, a monitoring fee of $1,250 was approved.[12])

The maximum amounts allowed are not applicable to every Chapter 13 case coming before the Court.  Attorneys who practice in the Orlando Division regularly represent debtors for lower fees than the maximum 'no-look' fee when the circumstances of the case justify a lower fee. The Court relies heavily on the Chapter 13 trustee and her office to review the amounts of attorney fees requested in every Chapter 13 case to insure the fees do not exceed the 'no look' guidelines (unless an appropriate application seeking additional fees is pending) and to object to any inappropriate fees. Attorneys who seek fees greater than the 'no-look' maximum by even one dollar must file a traditional fee application which will be reviewed by the Court using the lodestar analysis and factors set forth in § 330 and in *Johnson v. Georgia Highway Express, Inc.*[13]  As will be explained below, both the trustee and debtor's counsel failed to meet this standard in this case.

Debtor's counsel also has an additional requirement of disclosure.  In order to receive compensation, debtor's counsel must comply with the mandatory disclosure of compensation requirements of § 329 and Bankruptcy Rule 2016.[14] Section 329 requires a debtor's attorney to disclose *any* compensation paid *or agreed to be paid* if the payment or agreement to pay was made

---

[10] *Cahill v. Walker & Patterson, P.C.*, 428 F.3d at 541. See also *In re Debtor's Attys Fees in Chapter 13 Cases,* 374 B.R. 903 (Bankr. M.D. Fla. 2007).
[11] This 'no-look' fee is subject to revision as circumstances require "so that it continues to reflect fairness, consistency, and economic reality in the marketplace." *In re Howell*, 226 B.R. at 281.
[12] Doc. Nos. 12, 25, and 33.
[13] *Johnson*, 488 F.2d at 714.
[14] *In re Whaley*, 282 B.R. 38, 41–42 (Bankr. M.D. Fla. 2002).

in the year prior to the petition date.[15] Bankruptcy Rule 2016(b) sets forth the details that must be included in the formal disclosure requirement. Both § 329 and Rule 2016(b) impose a mandatory and continuing obligation on debtor attorneys to disclose their fees. After the initial disclosure in the petition, a debtor's attorney is required to file supplemental statements of compensation within 14 days after any payment or agreement to pay is made that was not previously disclosed.[16] Debtors' attorneys are required to disclose all payments received from, or promised by, their debtor clients, automatically and without reminding. "The disclosure system can properly function only when debtors' attorneys automatically and voluntarily, without prompting from the Court or a party in interest, disclose all payments received from their clients."[17] Where fees are not timely or properly disclosed, courts can order disgorgement or impose sanctions as appropriate, depending on the circumstances of each case.[18]

Branson here seeks attorney fees of $9,990. The trustee objects to the requested fees contending a reasonable fee for Branson's legal services is $7,314, a reduction of $2,676 from the amount he seeks. After thoroughly reviewing Branson's legal services and considering the failure of the trustee to timely enforce the limitations of the 'no look' fee, the Court will allow total fees of $9,740.

Debtor filed a Chapter 13 bankruptcy petition on April 3, 2009.[19] Debtor is single, has no dependents, and receives regular monthly paychecks from his employer. His only assets are his residence, an automobile, a personal injury claim, furniture, and his personal belongings. Branson knew the debtor wanted to keep his house and car, requiring the restructuring of the related debt,

---

[15] 11 U.S.C. § 329(a). See *In re Mills*, 170 B.R. 404, 407 (Bankr. D. Ariz. 1994).
[16] Fed. R. Bank. P. 2016(b).
[17] *In re Hackney*, 347 B.R. 432, 442 (Bankr. M.D. Fla. 2006).
[18] *Whaley*, 282 B.R. at 41 (citing *In re Campbell*, 259 B.R. 615, 628 (Bankr. N.D. Ohio 2001); *Law Offices of Nicholas A. Frank v. Marcy J.K. Tiffany (In re Lewis)*, 113 F.2d 1040, 1045 (9th Cir. 1997); *Hale v. U.S. Trustee (In re Basham)*, 208 B.R. 926, 931 (B.A.P. 9th Cir. 1997); *Mapother & Mapother v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996)).
[19] Doc. No. 1.

when he filed this simple Chapter 13 case.  He agreed to charge Mr. Becker a total of $3,500 for his legal work, $1,750 of which debtor paid as a pre-petition retainer.[20]

The case proceeded smoothly.  On November 9, 2009, the Court confirmed the debtor's second amended Chapter 13 plan[21] that accomplished the debtor's goals of keeping his home and car and restructuring the related debt.[22] The confirmation order approved attorney fees of $4,750, which included the agreed $3,500 for attorney fees and $1,250 for post-petition monitoring services.[23] (Because the debtor had paid a pre-petition retainer of $1,750, he was permitted to pay the $3,000 balance due over time through his Chapter 13 plan payments.)

Debtor, unfortunately, was unable to keep up with his mortgage payments after confirmation and asked his home mortgage lender, JP Morgan Chase, to modify the loan using the Home Affordable Modification Program (HAMP).[24] With Branson's help, the debtor obtained a temporary loan modification and resumed making home loan payments on a trial basis in April 2010. Debtor also modified his car loan. The debtor then sought to modify his Chapter 13 payments consistent with his new agreements with his primary creditors.[25]

Branson requested substantial additional fees of $8,061 in this second modified Chapter 13 plan.  He failed to file any fee application.  The trustee failed to object, even though the fees requested exceed the 'no look' fee limitations by $3,311.  (The maximum 'no look' fee in this case is $4,750 ($3,500 plus a $1,250 monitoring fee)). Because no objections were timely filed, the Court

---

[20] Doc. No. 1 at 34.
[21] Doc. No. 25.
[22] Doc. No. 33.
[23] Doc. Nos. 12 and 33.
[24] This is an official program under the Obama Administration's blanket Making Home Affordable (MHA) Program, part of the Department of the Treasury & Housing and Urban Development. HAMP is designed to help homeowners obtain more affordable, stable mortgages through government sponsored refinance.  Debtor was approved for a HAMP refinance (Doc. No. 45) and the Court granted its approval on June 8, 2010 (Doc. No. 49, Order Granting Motion for Approval *of Making Homes Affordable Program on a Temporary Basis*).
[25] Doc. No. 52.

approved the additional fees totaling $8,061.[26] Branson filed no additional disclosure of compensation as required by Bankruptcy Rule 2016 for this approximately $3,000 increase in fees.

On January 1, 2011, debtor entered into his final mortgage modification with JP Morgan Chase and filed a third modified plan to reflect this change.[27] This plan further increased the total fees debtor would pay to Branson to $9,781.[28] This time Branson did file an additional disclosure of compensation for $1,720 ($9,781 - $8,061= $1,720). Again, the trustee consented to the amended plan.[29] Debtor then filed a fourth modified plan, this time to *decrease* Branson's requested fees by $41 to a total of $9,740.[30] The trustee again consented to this modification,[31] and an order granting the fourth modified plan was entered allowing Branson's total compensation at $9,740.[32]

Debtor again struggled to make payments under this plan. On October 12, 2011, debtor filed a fifth modified plan.[33] This modified plan again decreased Branson's total fees to $9,468.[34] The trustee initially consented to this last modification,[35] but then objected to the amount of fees Branson was to be paid, arguing the fees are excessive.[36] The trustee contends Branson is only entitled to total attorney fees of $6,470 equaling the payment amounts he disclosed ($3,500 + $1,720 = $5,220) plus a monitoring fee of $1,250. While the attorney fee dispute was pending, an order confirming the last modified plan was entered on January 4, 2012.[37] This amended confirmation order allowed attorney fees in the amount of $9,468, which is consistent with debtor's fifth modified plan.

---

[26] Doc. Nos. 51 and 52. This includes fees of $7,707 ($5,987 + $1,720) plus costs of $354.
[27] Doc. No. 70.
[28] Doc. No. 72. This includes fees of $9,427 ($7,707 + $1,720) plus costs of $354.
[29] Doc. No. 73.
[30] Doc. No. 74. This includes fees of $9,116 ($7,396 + $1,720) plus costs of $354.
[31] Doc. No. 75.
[32] Doc. No. 80.
[33] Doc. No. 90.
[34] Doc. No. 90. This includes fees of $9,114 ($7,394 + $1,720) plus costs of $354.
[35] Doc. No. 91.
[36] Doc. No. 96.
[37] Doc. No. 101.

Branson responded by, at long last, filing an application for compensation[38] seeking attorney fees of $9,990, and another disclosure of compensation for additional fees in the amount of $3,950.[39] Branson primarily argues the additional fees were incurred in connection with modifying the debtor's mortgage and then modifying the debtor's Chapter 13 plan five times.

In determining the reasonableness of Branson's attorney fees and applying the *Johnson* factors, the Court finds the requested fees unreasonable. Branson received $3,500 to file this case and reach confirmation. He received an additional $1,250 monitoring fee to assist the debtor in the event of a default or upon a change of circumstances, which, not unexpected, the debtor encountered in this case. Mr. Becker, like many, if not most, Chapter 13 debtors, encounter problems making their Chapter 13 payments. This is expected. This is the entire reason for the allowance of the post-confirmation monitoring fees. Some cases require more work than others, but, overall, the work evens out, and one or two post-confirmation modifications are presumed included in the monitoring fee. As such, Branson already was compensated for his work on solving the debtor's initial problems following confirmation through the monitoring fee. The work was anticipated and included in the fee awarded at confirmation.

The Court however also agrees some additional fees were allowable, if properly requested and disclosed, when Branson further modified the debtor's mortgage post-confirmation and repeatedly sought appropriate modified confirmation orders. He disclosed additional compensation of $1,720, but, in reality, requested additional compensation for an over $3,000 more. The amended confirmation order[40] allowed attorney fees and costs now totaling $9,740, which exceeded the 'no look' fee amount by almost $5,000. Although Branson did not timely disclose the full amount of additional fees he sought, and although Branson did not timely file an application outlining why he should receive more than the presumptive 'no look' fee, the trustee did not timely object, and the

---

[38] Doc. No. 103.
[39] Doc. No. 99.
[40] Doc. No. 80.

order, which is now final, was entered on March 17, 2011. The Court, at this late date, will not disallow fees previously approved, even though Branson previously should have filed a supplemental disclosure of compensation as well as a fee application. The trustee unfortunately should have objected to those fees **at that time**, not now.  If an objection had been timely filed, the Court likely would have allowed some fees over the 'no look' threshold, but not the entire amount requested.  Branson, however, now has a final order allowing attorney fees and costs of $9,740, and the Court is not inclined to disturb the fee allowance in her final order entered over one year ago.

The Court, however, finds that no additional fees are reasonable at this time.  The most recent modifications to the debtor's Chapter 13 payments are routine changes made to implement the mortgage modification previously reached by the parties and inexplicably and unjustifiably to increase attorney fees. In a routine consumer case where the debtor, at best, restructures the debt on a home and car, the Court cannot envision finding the attorney fees requested in this case as reasonable upon a timely objection. As such, the Court will partially sustain the trustee's objection and partially allow Branson's fee application in the amount of $9,740, including the $1,750 retainer paid pre-petition and all costs.  All other fees are disallowed and the most recent confirmation order,[41] which was entered when the trustee's objection was pending, is modified to the extent needed by this order.

In the Orlando Division, parties rely on the guidelines of the 'no look' fees in accepting Chapter 13 cases.  Fees always are subject to the trustee's review and objection and, of course, to the Court's final approval.  In this case, however, the Court notes that the trustee did not closely monitor the 'no look' fee limitations.  Here, debtor's counsel exceeded the 'no look' threshold by almost $5,000 before any objection was filed.  Payment of almost $10,000 for a simple consumer Chapter 13 case, even one involving a mortgage modification, is not reasonable.

---

[41] Doc. No. 101.

From today forward, prior to submitting a confirmation order, initial or amended, the trustee should verify debtor's counsel has filed a timely disclosure of compensation covering all fees and costs requested. If no disclosure is filed, the trustee should object, and the Court likely will disallow the fees without a hearing. Moreover, even if a timely disclosure is filed, if the fees requested exceed the 'no look' fee limitations, the trustee should object to the fees requested unless debtor's counsel has filed a fee application that is subject to all parties' and the Court's consideration.

In conclusion, this case illustrates the need to monitor our local 'no look' fee provisions in Chapter 13 cases. Debtor's counsel 'ran up the tab' without timely filing needed disclosures or fee applications. The trustee did not file timely objections at an early stage. In the future, attorneys need to know the rules, the trustee needs to bring exceptions and infractions to light, and the Court needs to insure that all attorneys follow the rules.

In this case, Branson is allowed attorney fees and costs of $9,740. The trustee's objection is partially sustained. A separate order consistent with the Memorandum Opinion shall issue.

DONE AND ORDERED on April 3, 2012.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtor: Frank Arthur Becker, 4231 Yorketowne Road, Orlando, FL 32812

Debtor's Attorney: Robert B. Branson, 1501 E. Concord Street, Orlando, FL 32803

Trustee: Laurie K. Weatherford, P.O. Box 3450, Winter Park, FL 32790